Franklin S. Hovey *v.* James Howard, Appellant, and James T. Richards.

| 177 | 323 |
| 202 | 479 |

*Vendor and vendee—Mistake—Equity—Rescission of contract.*

On a bill in equity for the rescission of a contract for the sale of land, the master and the court below on sufficient evidence found as a fact that the plaintiff had agreed orally to sell to H., one of the defendants, a lot of ground with streets laid down upon a plan, excepting from the same four lots already sold which had acquired easements on the streets. A

clerk by direction of the plaintiff gave a receipt to H. for the portion of the purchase money paid, in which receipt the land was described in such a way as to include all of the land on the plan, without reference to the streets or the lots sold. Some months after the date of the receipt and, as plaintiff alleged, as soon as he discovered the mistake, he notified H., and subsequently tendered him a deed drawn in accordance with the oral contract, found by the master to be the real contract between the parties. The deed was refused. Subsequently H. conveyed his interest in the contract to R., the other defendant. Plaintiff informed R. that he elected to rescind the contract of sale, and tendered to R. the portion of the purchase money paid. *Held,* that plaintiff was entitled to a decree rescinding the contract.

Argued April 6, 1896. Appeal, No. 336, Jan. T., 1895, by defendant, James Howard, from decree of C. P. No. 1, Phila. Co., March T., 1891, No. 427, on bill in equity. Before STERRETT, C. J., GREEN, McCOLLUM, DEAN and FELL, JJ. Affirmed.

Bill in equity for the rescission of an oral contract for the sale of land.

The master found the facts to be as follows :

In 1888 plaintiff was the owner of certain land in the Twenty-eighth ward of the city of Philadelphia, bounded by Hunting Park avenue or Nicetown lane, land of George W. Blabon, the Philadelphia & Reading Railroad and land of George W. Carpenter. The land fronting on Nicetown lane had been partly improved and built upon, and a part thereof theretofore conveyed by plaintiff in lots extending in depth northwardly two hundred and twenty feet. Plaintiff had at this time laid out the tract of land in question by plan, and had placed thereon certain streets, known as Schuyler street on the east, sixty feet in width; a forty foot street immediately back of the Hunting Park avenue lots and a thirty foot street at a distance of one hundred and fifty feet north of said forty foot street running east and west called Midvale avenue. This plan was in existence on the 3d day of October, 1888. Lots had been laid out between said forty foot wide street and said Midvale avenue, and numbered from 1 to 74 inclusive, and also lots between Midvale avenue and the Philadelphia & Reading Railroad and fronting on said avenue numbered from 75 to 111 inclusive.

Previous to October 3, 1888, plaintiff had entered into contract of sale for lot No. 75 at the corner of Schuyler street and Midvale avenue, with one Ryder, and had received a payment on account of the consideration money of said purchase; and had also entered into a contract with one Bowman for the purchase of lots 109, 110, 111 fronting on Midvale avenue, and had received payments on account of the purchase money. On October 3, 1888, the defendant, James Howard, visited the plaintiff, Franklin S. Hovey, at his office, No. 248 Chestnut street, Philadelphia, with a view of purchasing some of the land in question; and after negotiations taking up the entire morning and up to 2 o'clock in the afternoon, an agreement of sale was arrived at, wherein defendant agreed to purchase and plaintiff agreed to sell the tract of land lying between the immediate rear of the Hunting Park avenue lots, the Philadelphia & Reading Railroad, the land of Carpenter and the lands of Blabon, for the price of sixteen thousand five hundred (16,500) dollars; three thousand (3,000) dollars cash down; two thousand (2,000) dollars to be paid on the 1st day of January, 1889, and the balance, eleven thousand five hundred (11,500) dollars on ground rent at five (5) per cent. Plaintiff contends that the agreement was for the sale of this tract, subject to the opening of streets laid down upon said plan known as plan No. 3, and excepting the lots 75, 109, 110 and 111 theretofore sold. Plaintiff instructed John C. Allen, in his employ, and who was familiar with his real estate matters, to write a receipt to defendant for $3,000 on account of purchase money, saying that he had sold the ground on the terms mentioned above as to payment. Mr. Allen thereupon wrote a receipt as set out in the bill, in the following words.

"PHILADELPHIA, October 3, 1888.

"Received of Mr. James Howard, three thousand dollars on account of the purchase money of lot of ground bounded by Blabon Carpenter on a line 220 feet N. W. of Nicetown lane and the Richmond branch of the Reading R. R. The whole purchase money for the same being sixteen thousand five hundred dollars. Payable three thousand this day, two thousand dollars January 1, 1889, balance on five per cent. ground rent.

(Signed)        "F. S. HOVEY,

"$3,000.                        per J. C. ALLEN, JR."

This receipt was not shown to or read by the plaintiff nor signed by him. His instructions to Mr. Allen were to go with the defendant to bank and get the $3,000 and give him the receipt. This was about half past 2 o'clock in the afternoon. The money was obtained by defendant and the receipt delivered him and the $3,000 paid Allen. Defendant was notified by the plaintiff within two weeks thereafter that the receipt was written mistakenly; that he had sold him the ground by the plan, and excepting the lots theretofore sold.

Defendant refused to reform the receipt and accept a new one, containing a memorandum of the real contract, but insisted upon a conveyance of the whole lot, as per the terms of the receipt. Negotiations were subsequently had between the parties to see if some understanding could not be arrived at, with a view to the satisfactory adjustment of the matter. Plaintiff offered to convey the lots numbered from 1 to 74 inclusive and Nos. 75, 109, 110 and 111 upon releases to him from the parties to whom he had already sold them, and agreed to sell and also convey the fee of Midvale avenue within the lines of his ground, and also from Schuyler street from said forty foot street on plan to the railroad, and subject as respects both streets, to easements acquired by purchasers of lots, and also subject to whatever interest they might have in the fee of the same, by virtue of their conveyances; that he would also convey the fee of the forty foot street abutting his lots subject to its use as a part of said street, and, as far as his interest was concerned, agree that said forty foot street should be made thirty feet. This was not accepted by defendant. Previously defendant had asked for a deed of tract bounded by Blabon on the northeast, by the railroad on the northwest, on the southeast by the land of said Hovey and others, fronting on Hunting Park avenue, and extending back two hundred and twenty feet, and by land of the Carpenter estate on the southwest as shown by the plan, upon it being understood and agreed that defendant should indemnify the plaintiff from all loss, trouble or demand that he might be put to by reason of outstanding conveyances, etc., and that Howard should lay out and dedicate to the city a street on the southeast portion of the said lot, immediately in the rear of the Hunting Park avenue lot thirty feet wide. On April 3, 1889, plaintiff had tendered the defendant the deed duly executed and acknowl-

edged by himself and wife, dated January 1, 1889, for said lots laid down on said plan, 1 to 74 and 76 to 108 inclusive, reserving said ground rent of $575, in accordance with the understanding of plaintiff as to the contract and also tendered the defendant at the same time a deed duly executed and acknowledged, conveying to said defendant a certain portion of Schuyler street marked on said plan subject to any easements that might have been acquired by purchasers of lots bounding thereon. This tender was declined by defendant. On the 1st day of May, 1889, defendant James Howard by deed conveyed all his right, title and interest in said contract of sale to Benjamin F. Teller, by deed recorded in deed book G. G. P. No. 504, page 329. On the 21st day of November, 1889, Benjamin F. Teller conveyed back the same to James Howard by deed recorded G. G. P. No. 582, page 259. On November 13, 1889, defendant Howard and wife conveyed to James T. Richards, the other defendant in these proceedings, all their right, title and interest in said contract by deed recorded G. G. P. 592, page 4. This deed was made for the purpose of collateral security, it is admitted, of an existing indebtedness of said Howard to said Richards. On July 10, 1890, plaintiff informed said James T. Richards that he elected to rescind the contract of sale, and tendered said Richards the sum of three thousand and fifty (3,050) dollars in cash, which he declined to accept. The plaintiff has thereupon filed his bill averring that the existence of said receipt so mistakenly given and the record now existing of said assignment of James Howard to Richards, is a cloud upon the title, and praying that the receipt be given up to be canceled and that James Howard and James T. Richards execute and deliver a written declaration in such form as shall be receivable in the office of the recorder of deeds of Philadelphia county, declaring that they have no right or title in the premises, and for general relief.

Plaintiff testifies that previous to October, 1888, in September of that year, defendant Howard came to him with a view of purchasing some of the land in question, and that the plan was then shown to him; that on October 3, 1888, the date of the contract when the agreement was entered into, he showed the plan to defendant, and states that he sold subject to that plan, excepting the four lots already sold, and that these terms were ac-

cepted by the defendant. That he made no agreement as to the lots sold, except that they were sold' and involved the opening of the streets laid down on the plan. He further testifies that defendant had first bought two or three of the front lots, then changed to four or five of the back lots, and then went to the entire purchase. He states positively that he did not see the receipt for the $3,000 after it was written, and that he sent a messenger after Mr. Allen and the defendant to find if a mistake had been made, but the money had passed and the receipt had been given. That he notified Mr. Howard by letter to come down to his store the next day, which he did, and the mistake was then pointed out to the defendant, but he declined to have any correction made.

Mr. John C. Allen, a bookkeeper for plaintiff who wrote the receipt, corroborates this testimony. He says that he did not show the receipt to Mr. Hovey before leaving the store, that he wrote the description in the receipt in order to specify what ground in question in making the sale was sold, not "sold a lot" or "sold grounds," because Mr. Hovey owned quite a number of tracts of ground over the city. That he knew the four lots had been sold. That the plan of lots was before him when he wrote the receipt.

Frederick Moore, a bookkeeper for plaintiff, testifies that he was in the office October 3, 1888, when Howard came in and heard Hovey say ".I cannot sell all of it because I do not own all of it, this ground has been planned out." That he got the plan and spread it before Mr. Hovey and Mr. Howard. Witness identifies the plan. That he heard plaintiff say "I cannot sell you all of it because I do not own all of it, this ground has been planned out." The above testimony does not appear to the master to be shaken by the cross-examination. Witness states that in the conversation as to the lots that had been sold he heard Howard say he could fix Ryder who had purchased one of the lots.

James Howard, the defendant, was called for cross-examination by the plaintiff. His testimony covers some fifty-three pages, in which is to be found the only evidence in support of the contemporaneous agreement in writing alleged to have been made between plaintiff and defendant Howard, and set up in his an-

swer in paragraph 4. His testimony in reference to this agreement will be found on pages 116–122. On page 119, he states "Mr. Hovey stated that he wanted an easement, if I did not want any streets to Bowman's lots, so that it would take all responsibility of damages and lawsuits, etc., from his shoulders, and me bear the responsibilities ; and he put it in writing and I signed it after they read it to me, but I cannot remember all that it said. He mentioned water courses, streets or highways and things of that kind, to the best of my ability, I cannot follow it up word for word."

The existence of any such agreement or the same ever having been made is denied by the plaintiff, and the burden of proof of this agreement introduced into the defendant's answer being upon the defendant Howard is of the most rambling kind, and in many places totally inconsistent with his answers sworn to and filed in this matter. He states in his answer to the bill, that the contract was made wholly and entirely without regard to any plan. In his testimony he admits that they had a plan before them at the interview of October, 1888. He says also on page 106, "that the plan was always there in his (Hovey's) ideas and in his mind, but there was none mentioned."

His whole testimony cannot fail to convince the master, that the main portion of the discussion that took place on October 3 took place with the plan before the parties. There is also a marked inconsistency between the statements made in the five paragraphs of the answer, wherein the defendant states that it was not until near the time of the final settlement, when defendant's conveyancer made a demand for the title papers, that he first learned that there was any mistake claimed to be in the receipt. In his testimony he admits that a couple of weeks after the 3d of October, 1888, he was sent for by and went to see defendant and told of the mistake. Defendant Howard admits that he is unable to remember distinctly at this late date all the circumstances. He is in doubt as to how many papers were signed on October 3, 1888. He thinks two were signed on that day, one the agreement set up in his answer, and one a paper as to the price of the ground. The following paper marked exhibit 1 proved to have been signed on that day was offered in evidence :

"EXHIBIT NO. 1.

"Office of FRANKLIN S. HOVEY,

"248 Chestnut Street.

"PHILADELPHIA, October 3, 1888.

"It is hereby expressly understood between Franklin S. Hovey and James Howard that the fifty dollars paid by the said James Howard to D. M. Pfautz, agent for F. S. Hovey on account of purchase of Nicetown lane lot shall be applied toward the purchase of lots Nos. 1, 2, 3, 38, 39 and 40 on plan No. 3 of said Franklin S. Hovey's lots, which he agrees to buy of said F. S. Hovey at the price of thirteen hundred dollars. One hundred and fifty dollars cash and balance on ground rent at 5 per cent. The said F. S. Hovey releases the said James Howard from the purchase of the Nicetown lane lot and the said James Howard gives up the purchase of the said lot.

"Witness our hands and seals the day and year above written.

"JAMES HOWARD          [L. S.]
"FRANKLIN S. HOVEY    [L. S.]

"Witness at signing
"JOHN C. ALLEN, JR."

The execution of this paper was positively denied by the defendant in his testimony on page 144. This paper becomes an important item in the plaintiff's proof, as going to show that the plan in question was undoubtedly before the parties on October 3, 1888.

Again the defendant in his answer (paragraph 3) positively denies that the receipt was erroneously given by said Allen and without authority of plaintiff, but on the contrary he avers that the receipt was dictated by plaintiff, and after it was completed it was examined by plaintiff and approved by him and by him handed to Allen with instructions to proceed to the Trust Company and hand the same to defendant on receipt of the $3,000. This is his account sworn to in July, 1891. In the following June he gives his testimony in reference to this receipt. This testimony is found on pages 122–128 and tells no connected or certain story. He says "he instructed that same gentleman to go with me to the Union Trust Company and I gave him $3,000 and he gave me the receipt. . . . I am sure it was the gentleman that drew it up that I paid the money to. . . . Mr.

Hovey instructed him if I am not mistaken, or Mr. Hovey gave it to him, I do not know." He does not remember what Hovey told Allen. Does not remember where the man wrote it, or what he did with it between the time he wrote it and when he gave it to him. He states " Hovey instructed him to go and get the money and give a receipt," and this is about all the light he gives us on this receipt in six pages of cross-examination.

Again in his answer he states that it was through complainant's interference that he was unable to purchase the outstanding title of Ryder to lot No. 75. In his testimony he states the only reason why he could not buy Ryder's lot was that he would not sell, because he thought it was worth more money than defendant offered him for it.

The only other evidence offered by the plaintiff that is necessary to comment upon was that of Henry W. Hall and F. S. Hovey. Mr. Hall testifies as to the tender of the deeds, and Mr. Hovey to the tender of the money and the rescission of the contract as set out in the bill. Mr. Hall also testified as to the attempt at negotiations for a settlement of the difficulties, and the proposition and counter proposition of himself acting for Mr. Hovey, and of Mr. Teller acting for Mr. Howard in an endeavor to come to a basis, upon which a conveyance of the ground could be made.

The testimony of the defendant Howard outside of his own cross-examination above mentioned was, that on January, 1889, he was ready with the money necessary to complete the purchase of the whole lot, and that Teller his conveyancer was ready with the money on January 1, 1889, but that Mr. Hovey declined to convey the whole lot, as described in the receipt.

The only other testimony was that of certain witnesses showing that the land had risen considerably in value since October, 1888. This is admitted by all parties to be the case ; but in the view the master takes in these proceedings, such evidence is not material.

A record of various deeds was also offered, showing that the properties heretofore conveyed on Hunting Park avenue did not call for any street in the rear. The evidence further shows that defendant Howard is now the owner of the lots purchased by Bowman from the plaintiff, but knowledge of this fact the plaintiff states was unknown to him until some time the following year.

Evidence was produced on the part of the plaintiff, showing that only a few days after the contract money was received on account of the sale of the Ryder lot, to wit, October 22, 1888, and money received by plaintiff on account of Bowman's lot in January, 1889, and Ryder lot in January, May and October, 1889. Plaintiff testifies that the ground was sold subject to the plan, which involved the opening of Schuyler street, and the street back of the row of houses that he owned (sixteen) with the exception of five that had been sold,—a forty foot street.

On page 6 plaintiff states his contract to be " I agreed to sell this ground back of this row of houses I had built upon, subject to that plan, with the exception of the four lots,—what I mean by subject to the plan is involving the necessity of opening the streets as mapped on that plan, which affected my interest and others to whom I had sold;" and that Howard accepted the proposition.

He testifies further, that he would not under any consideration have sold without the privilege of opening the street back of Nicetown lane lots, because he had too large an interest there himself.

Plaintiff never sought to recede from his contract on account, as was argued before the master, of the subsequent increase in the value of land, for his offer of conveyance made in 1889 and cited in the history of the case shows his willingness for a long time to meet the defendant on any fair ground.

On a careful review of the testimony, a great portion of which the master has not thought it necessary to comment upon at length in this report, he finds the following facts : That the contract made by the plaintiff Hovey with the defendant Howard was for the sale of the lot of ground calling for streets laid out on the plan, subject to the agreements of sale then outstanding of said four lots, and any easements the purchasers had acquired by reason of the plan and subject to the opening of the street to the rear of the Nicetown lane lots, and that defendant Howard so understood it; and that the receipt given by plaintiff's agent as evidence of such contract, was too general and broad in its description ; and not the real contract as understood between the parties. That the plaintiff has always been ready to comply with his part of the contract, but that defendant Howard has refused so to comply. That on the 3d day of

April, 1889, deeds were duly tendered defendant Howard for the land sold in accordance with the contract but that defendant Howard has refused so to comply. That on the 3d day of April, 1889, deeds were duly tendered defendant Howard for the land sold in accordance with the contract and declined. That on July 10, 1890, plaintiff elected to rescind the contract, and tendered to defendant Richards, then the holder of the receipt (and the evidence of said contract) the amount of money paid by defendant Richards, and interest, and requested the surrender of the receipt which was refused.

The master recommended a decree rescinding the contract.

Exceptions to the master's report were overruled by the court, and a decree entered rescinding the contract.

*Error assigned* was decree of the court.

*William F. Johnson,* for appellant.

*John G. Johnson,* with him *Henry W. Hall* and *Dwight M. Lowrey,* for appellee.

OPINION BY MR. JUSTICE McCOLLUM, October 5, 1896 :

We are unable to discover any particular force in the contention that the bill should have been dismissed on the ground that Howard had no notice, before it was filed, of Hovey's purpose to rescind the contract. Howard had assigned to James T. Richards, by deed dated November 30, 1889, and duly recorded in the proper office, whatever interests he acquired under his contract with Hovey. Before the institution of the suit Hovey had tendered to Richards all the money he had received from Howard on account of the contract, and it is clear that in the event of rescission Richards was the party entitled to receive it. He was made a corespondent with Howard in the suit and the same was heard and disposed of on its merits. There is no discernible cause for setting aside the decree if the findings on which it was based were warranted by the evidence.

The material question in the case is whether the learned court below erred in sustaining and entering a decree in conformity with Hovey's contention in regard to the nature and terms of his contract with Howard. Hovey claimed that the

contract was oral and limited to certain lots of ground situate at Nicetown and numbered on a certain plan of lots belonging to him, while Howard claimed that the contract was written and included all the ground "bounded by Blabon Carpenter on a line 220 feet northwest of Nicetown lane, and the Richmond branch of the Reading R. R." Hovey also claimed that the description in the receipt was erroneous and unauthorized by him; that it was made through the inadvertence of his clerk and that immediately upon the discovery of the mistake he sought from Howard and was refused a correction of it. It was further claimed by Hovey that before the contract in question was made he had sold to other parties four lots upon the plan which were expressly excepted from his sale to Howard, and that the land he sold to the latter was sold subject to the easements which the plan gave to the owners of other lots located upon it. These claims were also denied by Howard whose principal insistence was that the land sold to him was correctly described in the receipt.

In all the issues of fact made by the bill and answer the findings of the master are against the appellant. Those findings were warranted by the evidence and approved by the court. They established the contract as claimed by the appellee and show his willingness and the appellant's refusal to comply with it. They also show that the latter sought to acquire through the mistake of the clerk that which he knew was not included in their contract. Surely under these circumstances he ought not to complain of the rescission of the contract and the payment of the money received thereunder to the party who by his own deed was entitled to it.

Decree affirmed and appeal dismissed at the costs of the appellant.